# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

### BATON ROUGE DIVISION

| DONNYSIUS KADOR, ET AL | : | DOCKET NO. 07-682 |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| CITY OF NEW ROADS, ET AL | : | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court are two motions: "Motion for Summary Judgment Re: Donnysius Kador" (R.#70) by all defendants, and "Motion for Summary Judgment Re: Donell Francois, Jr." (R. #71) by all defendants. Defendants maintain that (1) they are entitled to qualified immunity, (2)certain claims are barred by Heck v. Humphrey, (3) and/or they are entitled to judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure because there are no genuine issues of material fact for trial. Plaintiffs opposes both motions. For the following reasons, the motion filed against Donnysius Kador will be granted in part and denied in part and the motion filed by Donell Francois will be granted.

## FACTUAL STATEMENT

On March 24, 2007, plaintiffs Donnysius Kador and her brother Donnell Francois, Jr. pulled into the Burger King parking lot to order food.[1] Prior to their arrival, the manager at Burger King had called the police regarding a fight which involved a weapon. Plaintiff's sister, Darlaycia Francois, was also was in the parking lot, in her car. The police officers parked one or more of their

---

[1] Ms. Kador also had her two minor children in the truck.

cars behind Darlaycia which hindered her ability to leave. There were no charges filed against the persons involved in the incident, but the restaurant had been closed temporarily. Plaintiff, Ms. Kador, disputes that there was still a crime scene or ongoing investigation when plaintiffs pulled into the lot, but insists that the officer defendants, Harold Terrance, John Boudreaux, and Mark Dupont, "were merely standing around chit-chatting among themselves and with the Sheriff's Deputies,[2] and customers were entering into the restaurant.[3]

After the officers moved their vehicles,[4] Ms. Kador drove right up in the middle of everything,[5] as her sister attempted to move her car to leave.[6] Even though the officers' units had been moved, Officer Terrance's car was still partially blocking Darlaycia's car.[7]

Immediately prior to her pulling in the parking lot, Ms. Kador was speaking with her sister on her cell phone. When she pulled into the lot with her window down, Ms. Kador overheard Officer Terrance say to her sister, "If you hit my car, I'm going to take your ass around the levee," meaning the Pointe Coupee Detention Center.[8] Officer Terrance admits to making this comment,

---

[2] Statement of Material Fact ¶ 1 of Kador. The Sheriff's deputies were Deputies Dabadie and Thibodeaux; these deputies have not been named as defendants.

[3] Plaintiffs' exhibit 3, Kador depo., p. 91.

[4] Defendants'exhibit H, Kador depo., pp. 117-118.

[5] Defendants' exhibit H, Donnysius Kador depo., p. 92, lines 6-7.

[6] Defendants' exhibit J., Darlaycia Francois, depo., p. 55.

[7] Plaintiffs' exhibit 8.

[8] Plaintiffs' exhibit 3, Kador depo., 98, lines 15-17; Plaintiff exhibit 8, Darlaycia depo., p 53, lines 1-4.

but testifies that it was said in a "jokingly" manner.[9]

Ms. Kador exited her truck to assist her sister and Darlaycia asked Officer Boudreaux if Ms. Kador could move her car.[10] The officers told Ms. Kador more than once to leave the scene and/or to return to her vehicle, but she refused.[11] Ms. Kador disputes this allegation and maintains that she was never told to return to her car[12] even though she admits she was never given permission to move her sister's car.

Because she refused to return to her vehicle, Ms. Kador was arrested.[13] After being told she was under arrest, Ms. Kador physically resisted efforts to restrain her by attempting to push Officer Terrance.[14] Ms. Kador was arrested for resisting an officer by disobeying several verbal orders to return to her vehicle.[15] Ms. Kador alleges that after she asked Officer Boudreaux if she could move her sister's car, she was violently attacked.[16] Ms. Kador alleges that Officer Terrance threw her around on the hood of a car, yanked her rollers out, "single-locked" the cuffs (as opposed to a double lock) which caused her wrists to bleed, shoved her in the back of the police car, and deliberately

---

[9] Plaintiffs' exhibit 3, Terrance depo, p. 159, lines 13-16.

[10] Plaintiffs' exhibit 3, Kador depo., p. 111.

[11] Defendants' exhibit D2, p.2; exhibit H, pp. 113, 123-124, exhibit K, p. 12.

[12] Plaintiffs' statement of material fact #14 and 15; Plaintiffs' exhibit 3, Kador depo., pp. 107-143; Plaintiffs' exhibit 6, Darlaycia depo., pp. 43-54, 68, 73, 83-85.

[13] Defendants' exhibit D1, p. 8.

[14] Defendants' exhibit D2, p. 2.

[15] Defendants' exhibit D1; Plaintiffs' exhibit 12..

[16] Plaintiffs' exhibit 3, Kador depo., pp. 142, 150, 154-156.

jostled her on the ride to the New Roads Police Department without the benefit of a seatbelt.[17]

Meanwhile, Donell Francois, Jr. "jumped out of the truck to help [his] sister Donnysius."[18] Defendants allege that Donell grabbed Officer Terrance as he was making the lawful arrest of Ms. Kador.[19] Donell denies grabbing or touching the officer and alleges that he exited the vehicle because his sister was being beaten by defendants, Terrance and Dupont, including having her head slammed into the car without any provocation or reason.[20] Donell was transported to the police station but was not charged with any crimes.

At the police station, Ms. Kador refused to cooperate with police until her father, Officer Donell Francois, Sr. arrived and advised her to cooperate.[21] On the day after the incident, Ms. Kador presented herself to emergency room with complaints of pain on her right side, specifically her right shoulder, knee, arm and elbow.[22]

Ms. Kador was charged with resisting an officer under Louisiana Revised Statute 14:108, but on June 19, 2007 the District Attorney refused the charge.[23] Plaintiff maintains that after she filed

---

[17] Plaintiffs' statement of material fact #24; Plaintiffs' exhibit 7, Terrance depo., pp. 122-123, 133; Plaintiffs' exhibit 3, Kador depo. pp. 165-173; Plaintiffs' exhibit 6, Boudreaux depo., pp. 53-54, 55, 127; Plaintiffs' exhibit 4, Donell depo., p. 31.

[18] Defendants' exhibit I, p. 32.

[19] Defendants' exhibit D1, p. 8.

[20] Plaintiffs' statement of material fact #20 and 21; Plaintiffs' exhibit 4, Donell depo., pp. 24, 31, 16-17, 21-22.

[21] Defendants' exhibit D2, pp. 4-7.

[22] Defendants' exhibit F.

[23] Plaintiffs' exhibit 13, Letter from ASA Mandie S. Lucas dated June 19, 2007.

the instant lawsuit,[24] the District Attorney's office was asked to reinstate the charges.[25] Plaintiff also alleges that her "arrest file" was back-dated and forged.[26] On June 11, 2009, Ms. Kador ultimately entered a *nolo contendere* plea subject to Louisiana Code of Criminal Procedure article 894.[27] After it was determined that she qualified, the charges against Ms. Kador were dismissed and her criminal record was expunged.

Donell further alleges that Officer Terrance harassed him at a community basketball game after the March 24, 2007 incident.[28] Officer Terrance denies these allegations. Donell alleges that he suffered immediate chest pain as a result of the arrest incident,[29] however, he has not sought any medical treatment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[30] A fact is "material" if its existence or

---

[24] This lawsuit was filed on September 24, 2007.

[25] Plaintiffs' statement of material fact #23.

[26] Id.

[27] Defendants' exhibit 12. L.S.A.-C.Cr.P.Art. 894 provides that when a defendant has been convicted of a misdemeanor, the court may suspend the imposition or execution of the sentence and place the defendant on probation.

[28] Plaintiff Donell's statement of material fact #24.

[29] Id.

[30] Fed. R.Civ. P. 56(c).

nonexistence "might affect the outcome of the suit under governing law."[31]    A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[32] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[33]  Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[34]  The burden requires more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[35]  There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[36]  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[37]

## LAW AND ANALYSIS

Defendants maintain that the claims made by Ms. Kador (1) are barred under <u>Heck v.</u>

---

[31]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[32]  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[33]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[34]  Anderson, 477 U.S.  at 249.

[35]  Celotex Corp. v.  Catrett, 477 U.S. 317, 324 (1986).

[36]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[37]  Anderson, 477 U.S. at 249-50.

6

Humphrey,[38]and/or (2) there is no genuine issue of material fact and defendants are entitled to judgment in their favor. Defendant Officers Terrance, Boudreaux and Dupont maintain that the § 1983 claims against them must be dismissed because they are entitled to qualified immunity. The City of New Roads and Police Chief McDonald maintain that the claims against them must be dismissed because they cannot be held liable under a theory of *respondeat superior.*

Title 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or caused to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

The first inquiry in any §1983 suit is to isolate the precise constitutional violation with which the defendant is charged.[39] The validity of the claim is then judged by reference to the specific constitutional standard which governs that right.[40]

### Qualified Immunity

*Officers Terrance, Boudreaux and Dupont*

Defendant officers maintain that they are entitled to qualified immunity. Certain officials, including police officers and other state actors performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right [ ] of

---

[38] 512 U.S. 447, 487 (1994).

[39] Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692 (1979).

[40] Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989).

7

which a reasonable person would have known."[41] This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit."[42] Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation."[43]

The two step analysis of qualified immunity requires us to determine whether plaintiffs have alleged the violation of a constitutional right and whether such right was clearly established.[44] The relevant, dispositive inquiry in determining whether a right is clearly established, is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.[45] Although "the *Saucier* rule prescribes the sequence in which the issues must be discussed by a court in its opinion, the rule does not-and obviously cannot-specify the sequence in which judges reach their conclusion in their own internal thought processes."[46] Therefore, a court can decide that there was no violation of a clearly established law before deciding whether the relevant facts make out a constitutional question.[47] Accordingly, the Court may exercise its sound discretion in deciding which of the two prongs in *Saucier* should be addressed first in light of the circumstances in the particular case at hand.[48]

---

[41] Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692 (1999).

[42] Hunter v. Bryant, 502 U.S. 224, 227, 112 S.CT. 534 (1991).

[43] Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985).

[44] Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001).

[45] Id. citing Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999).

[46] Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 820 (2009).

[47] Id.

[48] Id.

First, we will consider each of plaintiffs' § 1983 claims to determine if plaintiffs have offered prima facie evidence of their federal claims and second, we will determine if defendants are entitled to qualified immunity as to the claims which plaintiffs have presented sufficient evidence. The federal claims include excessive force and unlawful (false) arrest and imprisonment.

*Ms. Kador's Unlawful (false) arrest, imprisonment and detainment claim*

Ms. Kador asserts § 1983 claims of false arrest, imprisonment and detainment. Defendants maintain that the arresting officers had probable cause to arrest Ms. Kador. In order to prevail in a § 1983 claim for false arrest, plaintiff must show she was arrested without probable cause in violation of the Fourth Amendment.[49] Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.[50]

Ms. Kador alleges that defendants falsely imprisoned, arrested and detained her against her will.[51] Defendants submit that the defendant officers responded to a call by the manager at the Burger King with a complaint of a fight; one of the parties returned with a gun. The manager closed the restaurant, but subsequently restored the peace and/or resolved the situation. Ms. Kador pulled her vehicle into the parking lot, exited the vehicle and began confronting the officers. Ms. Kador was concerned about her sister who was unable to leave the parking lot in her car because Officer Terrance's unit was partially blocking her car. Both officers Terrance and Boudreaux ordered Ms. Kador to return to her vehicle. She refused, so they arrested her.

---

[49] Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001).

[50] United States v. McCowan, 469 F.3d 386, 390 (5th Cir. 2006).

[51] Complaint, ¶ 16, §§ 6 and 7.

9

Ms. Kador attempts to create a genuine issue of fact for trial by denying that the officers ordered her to return to the vehicle. Defendants submit their own testimony plus the testimony of the Burger King Manager, Markeisha Martin.[52] Ms. Kador admits that she got out of her car and was told by Officer Boudreaux, that "We don't need you to get her car out. She can do it."[53] Ms. Kador admits to resisting the arrest: "I began to try and push him off me."[54] The court finds that plaintiff has failed to establish that her arrest was without probable cause, thus she has failed to establish a prima facie case. Therefore, the motion for summary judgment will be granted dismissing Ms. Kador's § 1983 claims of false or unlawful arrest, imprisonment and detainment.

*Ms. Kador's excessive force claim*

Plaintiff asserts in her complaint that she was assaulted and battered. Defendants remark that plaintiff has failed to specifically allege excessive force in her complaint. The complaint alleges "[s]uch other actions and deliberate inactions as will be more fully shown at trial of this matter,[55] and "Petitioners' rights against the wanton infliction of physical harm under color of authority."[56] Plaintiff argues excessive force in her opposition memorandum. Therefore, the court will consider plaintiff's complaint to allege a § 1983 claim for excessive force.

An excessive force claim arises in the context of an arrest or investigatory stop of a free citizen and is more properly characterized as one invoking the protections of the Fourth

---

[52] Defendants' exhibit K, pp. 15-16.

[53] Defendants' exhibit D2, Ms. Kador's statement, p. 2.

[54] Id. p. 2.

[55] Complaint, ¶ 16, § 10.

[56] Id., ¶ 16, § 1.

Amendment.[57] The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen."[58] The use of force is excessive under objective standards of reasonableness.[59] Thus, the Fourth Amendment does not prohibit a police officer's use of reasonable force during an arrest.[60]

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and the quality of the intrusion on the individual's Fourth Amendment interests 'against the countervailing governmental interests at stake.' "[61] The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hind sight.[62] The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. [63] The court must consider the

---

[57] Pearson, 129 S.Ct. at 820.

[58] Terry v. Ohio, 392 U.S. 1, 19, n.16, 88 S.Ct. 1868, 1879, n.16 (1968).

[59] Id.

[60] Graham, 490 U.S. at 396 (1989)("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)).

[61] United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642 (1983).

[62] Terry, 392 U.S. at 20-22, 88 S.Ct. at 1879-1881.

[63] See Scott v. United States, 436 U.S. 128, 137-139, 98 S.Ct. 1717 (1978).

11

circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.[64]

A court must be mindful that police officers are "forced to make split-second judgments– in circumstances that are tense, uncertain and rapidly evolving– about the amount of force that is necessary in a particular situation."[65]

Whether the force used is reasonable depends on the totality of the facts and circumstances in each case.[66] Factors to be considered in making a determination of whether the force used was reasonable under the circumstances include (1) the known character of the arrestee, (2) the risks and dangers faced by the officer, (3) the nature of the offense or behavior involved, (4) the chance of escape if the particular means are not employed, and (5) the existence of alternative methods of arrest or subduing the arrestee, (6) the physical size, strength and weaponry of the officers as compared to that of the arrestee, and (7) the exigencies of the moment.[67]

As to these factors, plaintiff asserts that she had no police record and had never interacted with the New Roads Police Department. Plaintiff insists that there was no ongoing investigation at the time of the arrest and the officers were just "chit-chatting". Ms. Kador submits that she weighs a mere 120 pounds and that there was no offense involved in her arrest. Ms. Kador submits that there was no chance of an escape as her two young children were in the truck. Furthermore, there

---

[64] Graham, 490 U.S. at 396, 109 S.Ct. at 1872.

[65] Id. at 396.

[66] Nelson v. City of Shreveport, 921 So.2d 1111, (La.App. 2 Cir. 2006).

[67] Kyle v. City of New Orleans, 353 So.2d 969 (La.1977).

were five (5) officers at the scene and she again reiterates that she weighs 120 pounds. Finally, Ms. Kador asserts that there were no exigencies of the moment as there was nothing going on at the Burger King at the time of her arrest. Ms. Kador reminds the court that Officer Terrance deliberately single-locked the handcuffs which he and Officer Boudreaux admitted that they knew would cause her physical harm.[68] Ms. Kador maintains that the force applied, which included the single-locked handcuffs, slamming her head onto the car's hood, ripping the rollers from her head, shoving her body into the car, not restraining her with a seat belt, and jostling her around while being transported to the police station was clearly excessive to the need.

Defendants rely on the New Roads Police Department Manual which states that officers are responsible for securing and protecting the scene.[69] The Manual further states that when a misdemeanor offense is occurring in the presence of an officer, the officer may arrest the perpetrator without a warrant.[70] Defendants also rely on Officer Terrance and Boudreaux's deposition testimony wherein both officers state that they told Ms. Kador to leave (Ms. Kador denies this); Officer Terrance testified that Ms. Kador refused to cooperate.[71] Thus, Officer Terrance grabbed Ms. Kador's arm, tried to take the cell phone from her and "tussled" with her in order to place the handcuffs on her wrists.[72] In her deposition, Ms. Kador admits that there was a struggle.[73]

---

[68] Plaintiffs' exhibit 7, Terrance depo., p. 105.

[69] Defendants' exhibit F, p. 49.

[70] Id. pp. 41-42.

[71] Defendants' exhibit G, pp. 107-108.

[72] Id.

[73] Defendants' exhibit H, p. 154.

Defendants also submit the deposition testimony of Burger King Manager, Markeisha Martin who witnessed the incident; the relevant colloquy is as follows:

Q.    What happened after she swung at Mr. Harold?

A.    Right after she swung at Mr. Harold, he placed her on the car again. She went to swinging her arms trying to get away from him. And he was constantly asking her to be still. She kept just swinging her arms. I mean, not her hands, but her elbows were just constantly moving and she was trying to break away from him. And he kept telling her "Ma'am, you're going to have to be still before I place you under arrest." She didn't listen. Her rollers came out of her hair because she was just out of order, her cell phone broke. She did say, "You see what the F you did", as saying Mr. Harold [Officer Terrance] broke her cell phone. But she was the one actually making the movement.

Q.    Did she appear to be out of control?

A.    Very out of control

Q.    And then what happened?

A.    Mr. Harold put handcuffs on her and told her she was under arrest.[74]

Ms. Kador's recollection of the events is quite different and is as follows: after exiting her truck, Ms. Kador asked Officer Boudreaux if she could move her sister's truck and further inquired as to why Officer Terrance would not let her sister out of the parking lot. Officer Boudreaux told Ms. Kador "we don't need you help," and Officer Terrance began "screaming and yelling" at Ms. Kador and saying some "nasty things."[75] Ms. Kador then believed that Darlaycia was in threat of bodily harm.[76]

---

[74] Defendants' exhibit K, pp. 15-16.

[75] Plaintiff's exhibit 3, pp. 111-114, 134-136 and 122-126.

[76] Id.

Ms. Kador then claims for no reason, with Officer Boudreaux screaming in her face, Officer Terrance attacked her and/or "pounced" on her.[77] Ms. Kador further testifies that she did not swing at Officer Terrance.[78] Ms. Kador and Darlaycia testify that after Officer Terrance grabbed Ms. Kador, Officer Dupont also grabbed her and the two officers then slammed her body against a police car, slammed her head on the car's hood, ripped rollers from her head, hand-cuffed her with a single lock, and threw her in the back of the police unit, deliberately jostling her on the way to the police station.[79] Officer Boudreaux testified that anytime you put handcuffs on a subject, either male or female, the protocol is to double lock them because if they are single locked, the cuff will tighten on their wrist and hurt the arrestee.[80] Ms. Kador also alleges that Officer Terrance grabbed her cell phone and ripped it in two in front of her.

Plaintiff also submits the deposition testimony of Officer Boudreaux who testified that Ms. Kador willingly got into the patrol car,[81] whereas Officer Terrance states that she did not.

Having considered the summary judgment evidence submitted by the parties, the court finds that there are genuine issues of material fact for trial as to whether or not excessive force was used against Ms. Kador during her arrest. The reasonableness of defendants' actions must be evaluated by the trier of fact. When the issue of qualified immunity requires resolution of factual disputes, the

---

[77] Id. at pp. 154-156.

[78] Id.

[79] Plaintiff's exhibit 3, Kador depo., pp. 107-143; Plaintiff's exhibit 8, Darlaycia depo., pp. 75-78, 85.

[80] Plaintiff's exhibit 6, Boudreaux depo., p. 53.

[81] Plaintiff's exhibit 6, Boudreaux depo., p. 55.

court must defer consideration of immunity until the factual issues are resolved by a jury.[82] Thus, the motion for summary judgment will be denied with respect to Ms. Kador's claim of excessive force and the officers' entitlement to qualified immunity.

*Donell Francois' excessive force claim*

Donell also asserts § 1983 claims of false arrest and excessive force. Donell must show that the officers used force that was unreasonable or excessive. Plaintiff remarks that he did not actively resist arrest or attempt to evade arrest by flight. He also argues that he was arrested for getting out of the truck. Plaintiff has failed to submit any evidence that defendants used excessive force in effecting the arrest. Donell testified that he received no medical treatment in connection with the incident.[83] Because Donell has failed to establish a prima facie case of excessive force, the motion for summary judgment will be granted dismissing this claim.

*Donell's false arrest, imprisonment/detainment claim*

Donell further asserts a claim for false arrest, imprisonment and/or detainment. Defendants maintain that the arresting officers had probable cause to arrest Donell. In order to prevail in a § 1983 claim for false arrest, plaintiff must show he was arrested without probable cause in violation of the Fourth Amendment.[84] Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.[85]

---

[82] Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).

[83] Defendants' exhibit I, p. 17.

[84] Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001).

[85] United States v. McCowan, 469 F.3d 386, 390 (5th Cir. 2006).

Defendants assert that in his deposition testimony, Donell admitted that he jumped from the vehicle to assist his sister, Ms. Kador. Specifically, Donell testified that "I was going to stop it because, like I said before, I felt like the man of the family, and my protective instincts kicked in."[86] They argue that this was a clear interference with the valid and proper arrest of Ms. Kador. Defendants also submit the arrest record and statement of Sheriff Deputy Dabadie who states that Donell "jumped" out of the truck and tried to grab Officer Terrance, resulting in Officers Boudreaux and Thibodeaux placing handcuffs on him.

Defendants remark that Donell was in violation of Louisiana Revised Statute § 14:108 which is as follows:

> A.   Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.

The court finds that the arrest of Donell was justified in that he was intentionally attempting to interfere with the arrest of Ms. Kador. Donell has failed to submit summary judgment evidence to create a genuine issue of material fact for trial and has failed to establish a prima facie case. Accordingly, Donell's claim of false arrest, imprisonment and/or detainment will be dismissed.[87]

### *Heck v. Humphrey*

Defendants maintain that plaintiff's claims (Ms. Kador) are barred by Heck v. Humphrey,

---

[86] Defendants' exhibit I, p. 32.

[87] Complaint, ¶ 16, § 9. R. #1.

because a plea of *nolo contendere* is a conviction in the eyes of the law.[88]    Defendants argue that because plaintiff pled no contest and was convicted of the charges surrounding the subject arrest and prosecution, she is barred from bringing claims related to her conviction.[89]

Ms. Kador maintains that her claims are not barred by Heck[90] because her criminal record was completely expunged, and she was afforded the benefit of Louisiana C.Cr. P. art. 894[91] which provides that she is to be considered as having been fully acquitted of the charges.  Plaintiff further maintains that her nolo plea is not admissible under Federal Rule of Evidence 410.[92]  Ms. Kador

---

[88] "A sentence imposed upon a plea of nolo contendere is a conviction and may be considered as a prior conviction and provide a basis for prosecution or sentencing under laws pertaining to multiple offenses, and shall be a conviction for purposes of laws providing for the granting, suspension or revocation of licenses to operate motor vehicles. La.Code Crim. Proc. art. 552(4)).

[89] See Watson v. City of New Orleans, 2000 WL 354399 at *1 (E.D.La. April 5, 2000) affirmed, 275 F.3d 46, 2001 WL 1268718 (5th Cir. 2001); see also DeLeon v. City of Corpus Christi, 488 F.3d 649 (5th Cir. 2007).

[90] Plaintiff's exhibit 2, expungement order.

[91] La. C. Cr. P. Art 894 provides, in pertinent part:

> B.(1)    When the imposition of a sentence has been deferred by the court, as authorized by this Article, and the court finds at the conclusion of the period of deferral that the defendant has not been convicted of any other offense during the period of the deferred sentence, and that no criminal charge is pending against him, the court may set the conviction aside and dismiss the prosecution. . .
>
> (2)    The dismissal of the prosecution **shall have the same effect as an acquittal, . . .**

[92] Rule 410 provides the following:

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the pleas or was a participant in the plea discussions:

(1) a plea of guilty which was later withdrawn;

18

argues that there is no pending charge against her, she has successfully completed pretrial diversion, the criminal charges have been dismissed, and the criminal record expunged. Ms. Kador further argues that her damage claims do not challenge the legality of her conviction because she was never convicted, noting that the true import of Heck is to avoid habeas-type relief under the guise of a § 1983 action.

Defendants remark that courts have in fact allowed the use of the nolo plea despite the plaintiff's objection under Rule 410 because an excessive force claim would undermine a conviction for assault.[93] The court notes that Louisiana Code of Criminal Procedure article 552 specifically states that a *nolo contendere* plea is a conviction. We find that Ms. Kador's plea of *nolo contendere* and her dismissal under Louisiana Code of Criminal Procedure article 894, followed by an order of expungement is not an acquittal as argued by plaintiff's counsel.

In Heck v. Humphrey,[94] the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." "[I]n a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff

---

(2) a plea of nolo contender; . . .

[93] Mayberry v. Hamblen, 206 WL 503511 (W.D. Tex. 2006).

[94] 512 U.S. 477, 487, 114 S.Ct. 2364 (1994).

would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.[95]

In Hudson v. Hughes,[96] the court determined that the reasoning of Heck prohibited a plaintiff accused of battery of an officer from asserting an excessive force claim finding that the battery would have been justified and therefore the original conviction would have been defeated.[97] Defendants also rely on Mayberry supra, an unreported case. In Mayberry, the court relied on Sappington v. Bartee.[98] Sappington, a progeny of Heck specifically holds that an excessive force claim under § 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events. The Sappington court also concluded that a criminal conviction for aggravated assault negated the finding of excessive force by the officer because under Texas Penal Code § 22.02(a)(1), an aggravated assault justifies the use of any force up to, and including deadly force to protect against harm. Thus, defendants maintain that plaintiff's claims, if successful, would undermine Ms. Kador's conviction for resisting an officer.

Ms. Kador plead nolo contendere to the charge of resisting an officer. Louisiana Revised Statute 14:108 provides the following:

> Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful

---

[95] Id. at 486-87, 114 S.Ct. 2364.

[96] 98 F.3d 868 (5th Cir. 1996).

[97] Id. at 872.

[98] 195 F.3d 234 (5th Cir. 1999).

process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

Defendants submit that any claim plaintiff pleads that is inconsistent with her conviction must be dismissed; those claims include substantive and procedural due process violations, intentional and negligent infliction of emotional distress, false imprisonment and arrest, and assault and battery, or excessive force.

*Substantive and procedural due process*

Plaintiff alleges that defendants intentionally violated her "substantive due process rights to bodily integrity and procedural due process rights, Petitioner's rights against wanton infliction of physical harm under color of authority."[99] Ms. Kador was arrested after disobeying a direct order from a police officer; she was then charged with resisting an officer. In an attempt to create a genuine issue of material fact, Ms. Kador asserts that she was never asked to return to her vehicle. However, her plea of *nolo contendere* says otherwise. To allow a claim for violation of substantive due process to go forward would necessarily imply the invalidity of Ms. Kador's plea. Accordingly, this claim will be dismissed as barred by Heck.

*Ms. Kador's false imprisonment, arrest and/or detention claim*

Ms. Kador alleges that defendants falsely imprisoned, arrested and detained her against her will.[100] Defendants maintain that these alleged constitutional violations are wholly inconsistent with plaintiff's conviction for resisting arrest under a Heck analysis. Ms. Kador maintains that there was a complete absence of probable cause to arrest and imprison her. She further maintains that "under

---

[99]  Complaint, ¶ 16 § 1, R. #1.

[100]  Complaint, ¶ 16. § § 6 and 7.

21

no circumstances could she have ever been found guilty of violating Louisiana Revised Statute 14:108."[101] Plaintiff maintains that she was never told to return to her car, thus there is a genuine issue of material fact. She also argues that she is allowed to resist an unlawful arrest. We find no merit to plaintiff's argument. Under Heck, a judgment in plaintiff's favor would invalidate plaintiff's *nolo contendere* plea which as previously stated is in effect a conviction. Accordingly, we find that plaintiff is barred from asserting this claim.

State Law Claims

*Ms. Kador's intentional and negligent infliction of emotional distress*

First, the court notes that defendants make no argument that this claim should be dismissed because it would undermine Ms. Kador's conviction for resisting an officer. Defendants maintain that plaintiff cannot show such "extreme or outrageous" behavior from the officers. Defendants further maintain that Ms. Kador has presented no evidence that defendant actually intended to cause her extreme emotional distress, as required to recover for this tort.

In order to recover for intentional infliction of emotional distress, a plaintiff must establish, (1) extreme and outrageous conduct by defendant, (2) severe emotional distress suffered by plaintiff, and (3) a desire by defendant to inflict severe emotional distress or knowledge that severe emotional distress would be certain or substantially certain to result from its conduct.[102]

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and

---

[101] Plaintiffs' opposition brief, p. 15, ¶ 3.

[102] White v. Monsanto Co., 585 So.2d 1205 (La.1991).

22

to occasional acts that are definitely inconsiderate and unkind. The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interest. [103]

Defendants submit the testimony of the independent medical examiner, Dr. Rostow, who discussed Ms. Kador's treatment history for her alleged psychological distress. In summary, Dr. Rostow, after conducting a battery or tests, found that there was no clear support for a diagnosis of Post Traumatic Stress Disorder or Agoraphobia as an identifiable diagnosis.[104]  Specifically, Dr. Rostow noted that Ms. Kador was seen by a counselor on five (5) occasions from March 27, 2007 until November 6, 2008. Her counseling had terminated, and she did not seek further medication or receive any psychological or medical attention. Defendants also remark that the medical report from the day after the incident revealed no underlying clinical symptoms suggestive of mental distress or any appearance of physical injury other than subjective complaints of knee and shoulder pain.[105]  Plaintiff disputes this and argues relying on her own testimony that she was physically injured including bloodied wrists from the single-locked hand cuffs. As noted by defendants, the medical report however reveals no physical sign of injury to Ms. Kador's wrists.

Plaintiff argues that defendants brutally grabbed her, slammed her head, abdomen and body against the car, and deliberately single-locked the hand cuffs to cause her further physical injury. Conduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous

---

[103] Id. at 1209 (citations omitted).

[104] Defendants' exhibit N, p. 10.

[105] Defendants' exhibit E, p. 1.

for purposes of the tort of intentional infliction of emotional distress.[106] Liability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct.[107]

Defendants have presented cases wherein Louisiana courts have found that there is an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious."[108] Such claims include mishandling corpses, falsely informing someone of a spouse's death, and damaging property while the owner is physically present to witness. Plaintiff has failed to submit any cases to buttress her emotional distress claim.

The court finds that Ms. Kador has failed to establish the essential elements of her intentional and negligent infliction of emotional distress claim. Specifically, plaintiff has failed to establish that defendants intentionally desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result. Furthermore, defendants' conduct was not of such an appalling or reprehensible nature to rise to the level of an intentional and/or negligent emotion distress claim. Accordingly, the motion for summary judgment will be granted and Ms. Kador's claim for intentional and negligent infliction of emotional distress will be dismissed.

---

[106] Nicholas v. Allstate Ins. Co., 765 So.2d 1017 (La.2000).

[107] White, at 1210.

[108] Johnson v. Orleans Parish School Board, 975 So.2d 698, 711 (La.App. 4 Cir. 2008), quoting Moresi v. State Through Dep't of Wildlife and Fisheries, 567 So.2d 1081, 1096 (La.1990).

*Ms. Kador's assault and battery claim*

Plaintiff alleges that defendants committed an assault and battery upon her person.[109] Defendants argue that to find that plaintiff's arrest was invalid or unlawful, would be clearly inconsistent with her prior conviction for resisting an officer and barred by Heck. The issue is not just whether or not the arrest was unlawful, but whether in arresting Ms. Kador, defendant used excessive force. The claim of assault and battery, if found in favor of Ms. Kador would not invalidate the conviction of resisting an arrest.[110] Law enforcement can use excessive or unreasonable force in effecting an arrest, even where a person is resisting. For instance, if a person is resisting arrest by not allowing the officer to place handcuffs on them, it would be an unreasonable use of force to shoot that person or use any type of force that was objectively unreasonable and not necessary to safely make the arrest.

Louisiana jurisprudence establishes that the physical attack of a private citizen by a police officer absent a valid arrest constitutes a battery.[111] Code of Criminal Procedure Article 220 provides that reasonable force may be used to effect a lawful arrest. However, our courts have also held that a citizen has the right to use reasonable force to resist an unlawful arrest.[112] A police

---

[109] Complaint, ¶ 16, § 8. R. #1.

[110] See VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir. 2006)(holding that a successful § 1983 suit for excessive force would not imply the invalidity of the underlying conviction for resisting a law enforcement officer).

[111] Ross v. Sheriff of Lafource Parish, 479 So.2d 506 (La.App. 1st Cir. 1985) citing Norrell v. City of Monroe, 375 So.2d 159 (La.App. 2nd Cir. 1979); Malone v. Fields, 335 So.2d 538 (La.App. 2nd Cir. 1976).

[112] City of Monroe v. Ducas, 203 La. 974, 14 So.2d 781 (1943); White v. Morris, 345 So.2d 461 (La.1977).

officer is not liable for assault and battery based upon the officer's lawful arrest of a person, where there was no use of excessive force or unreasonable contact by the officer. As previously stated, the court has concluded that plaintiff has failed to establish that her arrest was unlawful. Thus, the issue is whether the force used to arrest Ms. Kador was unreasonable. In our analysis of excessive force, we concluded that Ms. Kador had submitted sufficient summary judgment evidence to create a genuine issue of material fact as to the use of force by defendants when they arrested her. Likewise, the court finds for those same reasons that there is a factual dispute regarding the events surrounding the arrest which can only be decided by the trier of fact. The motion for summary judgment to dismiss plaintiff's state law claim of assault and battery will be denied.

*Donell Francois*

Plaintiff, Donell Francois, was in the vehicle with his sister, Ms. Kador. When he saw her being arrested, he exited the vehicle and was arrested and transported to the New Roads Police Department; he was not charged or convicted of any crime. Donell also alleges in the complaint that he was subsequently harassed by Officer Terrance at a local basketball game. Donell asserts the following claims; substantive and procedural due process rights, intentional and negligent infliction of emotional distress, failure to train the officers, failure to take adequate steps to insure this situation would occur, failure to supervise officers, false imprisonment and/or detainment, false arrest, assault and battery, and harassment. Defendants seek to dismiss all of these claims.

*Substantive and procedural due process*

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.[113] Donell has failed to argue or submit any summary judgment

---

[113] Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

evidence to establish this claim. Accordingly, any claims for violation of substantive and procedural due process violations will be dismissed.

*Intentional and negligent infliction of emotional distress*

Defendants maintain that Donell cannot show "extreme or outrageous" behavior by the officers. Defendants remark that Donell has not been seen or treated by a therapist or mental health provider and further admits that he had no medical expenses of any kind.[114] Donell argues that Officer Terrance "physically" confronted him "at a community basketball game harassing him because he filed a complaint."[115] The court finds that the conduct of defendants toward Donell was no so extreme and outrageous to warrant a claim for intentional or negligent infliction of emotional distress. Accordingly, this claim will be dismissed.

*False imprisonment, arrest and/or detainment*

Donell alleges that he was falsely imprisoned, falsely arrested and/or detained.[116] For the reasons set forth above in determining if the defendant officers were entitled to qualified immunity, the court finds that Donell has not established that the arrest was without probable cause. Furthermore, Donell has failed to submit summary judgment evidence to create a geniuine issue of material fact for trial. Accordingly, the motion for summary judgment will be granted dismissing Donell's state law claim of false imprisonment, arrest and/or detainment.

*Assault and battery*

Donell also asserts claims of assault and battery. Donell must show that the officers used

---

[114] Defendant's exhibit B, Answers to 15, 16,and 21; Exhibit I, p. 17.

[115] Plaintiff's opposition memorandum, p. 24.

[116] Complaint, ¶ 16, § § 6 and 7.

force that was unreasonable or excessive. Plaintiff remarks that he did not actively resist arrest or attempt to evade arrest by flight. He also argues that he was arrested for getting out of the truck. Donell testified that he received no medical treatment in connection to the incident.[117] The court finds that plaintiff has failed to submit evidence to create a genuine issue of fact for trial to establish that Officers Boudreaux and Thibodeaux used unreasonable force such that would constitute an assault and battery. Accordingly, Donell's claim of assault and battery and/or excessive force will be dismissed.

*Harassment/retaliation*

Donell asserts that he was harassed and threatened bodily harm by Officer Terrance in violation of his First Amendment rights. Defendants argue that this is a vague allegation that is not actionable under § 1983. Plaintiff maintains that this is an action for retaliation as a result of filing the complaint regarding the police misconduct. Donell asserts that at a community basketball game, he was harassed, threatened and intimidated by Officer Terrance.

Police retaliation against a citizen for the exercise of a constitutionally protected right violates the Constitution.[118] However, plaintiff must prove but-for causation in a First Amendment retaliation claim.[119]

To support his claim of retaliation and/or harassment, Donell submits his own statement and the statements of Donell, Rosheda Fields, Wesley Derozen, Jameion St. Cyr, D. Lee, as well as a complaint letter authored by Donell's father, Mr. Donell Francois, Sr., to the New Roads Police

---

[117] Defendants' exhibit I, p. 17.

[118] Morfin v. City of East Chicago, 349 F.3d 989, 1005 (7th Cir. 2003).

[119] Fairley v. Andrews, 578 F.3d 518, 525 (7th Cir. 2009).

Department.[120] These statements indicate that on May 27, 2007 (some two months after the arrest incident), Donell had attended and played at a basketball tournament at the Point Coupee Central High School. After his game, Donell stayed to watch the other teams play; at some point a fight broke out. The fight was on the right side of the court and Donell was standing on the left side. During the fight Mr. Toby St. Cyr put his arm around Donell and encouraged him not to get involved. Donell responded that he would not, and that he was just looking for his mother.[121] After the fight ended, Officer Terrance, who was off-duty, approached Donell and confronted him about the fight. Donell responded that he was not involved and told Officer Terrance not to talk to him. Donell then started walking away. Officer Terrance yelled, "Oh yeah, I'm going to make you talk,"[122] and the two started arguing. Mr. St. Cyr grabbed Donell to calm him down and Ms. Fields, Donell's mom, approached and took Donell outside. Officer Terrance continued to follow Donell still yelling, "I'm going to make you talk" and "Oh yeah boy, you gonna talks [sic] to me . . ." Donell has also submitted the statements of Wesley Derozan, Jameion St. Cyr, D. Lee, and a letter from Donell Francois, Sr. that corroborates the incident. Defendants argue that Donell has failed to submit evidence that the heated incident constituted retaliation for the incident that occurred at Burger King and/or that there is no evidence that Officer Terrance threatened Donell with bodily harm.

While the court is concerned about Officer Terrance's conduct and deems it inappropriate and rude, other than yelling comments about making Donell talk, Office Terrance made no threats

---

[120]  Plaintiff's exhibit 17.

[121]  Id. Donell statement.

[122]  Id.

of bodily harm, nor did he actually detain Donell or take any other adverse action toward Donell. Furthermore, this was the only incident that Donell complains of against any of the defendants. Thus, we find that Donnell has failed to establish a claim for harassment and/or retaliation. Accordingly, the court will grant the motion for summary judgment and dismiss Donell's claim for harassment and/or retaliation.

*New Roads Police Department and Police Chief McDonald*

Plaintiffs, Ms. Kador and Donell, have sued Police Chief Kevin McDonald, individually and in his official capacity and the New Roads Police Department. Plaintiffs allege that the New Roads Police Department failed to train its officers, failed to take adequate steps to insure this situation would not occur, and failed to adequately supervise the defendant officers.[123]

Municipalities and other local governmental bodies are "persons" within the meaning of § 1983.[124] However, a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.[125] Instead, the plaintiff must identify a municipal "policy" or "custom" that caused the injury.[126] The "official policy" requirement was intended to distinguish acts of the *municipality* from the acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible.[127] Thus, "it is when execution of a

---

[123] Complaint, ¶ 16, § § 4 and 5. R. #1.

[124] Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 2037 (1978).

[125] Id. at 692, 98 S.Ct. at 2036.

[126] Pembaur v. City of Cincinnati, 475 U.S. 469, 480-481 (1986).

[127] Id.

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[128] "Official policy" often refers to formal rules or understandings–often but not always committed to writing–that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.[129] Therefore, plaintiffs must demonstrate that the municipality was the "moving force" behind the injury alleged.[130]

Furthermore, "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.' "[131] Plaintiffs have failed to establish a policy or custom of the New Roads Police Department that was the moving force behind Ms. Kador's alleged injuries.

Plaintiffs allege that Officer Terrance was not properly trained relying on Officer Terrance's deposition wherein he testified that he had failed the shooting range part of the test, and that he had received no training at the New Roads Police Department other than on the job training.

The court has reviewed Officer Terrance's deposition testimony. Officer Terrance attended a "POST" academy on two occasions after the incident in question, but did not pass the firing range test.[132] Prior to the incident he had attended a part-time academy in Baker; he did not graduate from

---

[128]   Monell, 436 U.S. at 694, 98 S.Ct. at 2038.

[129]   Pembaur, 475 U.S. at 480-481.

[130]   Id.

[131]   Peterson v. City of Fort Worth, 588 F.3d 838 (5th Cir. 2009).

[132]   Plaintiff's exhibit 7, Terrance depo., pp. 18-21.

the course because the class was cut.[133]  Officer Terrance further testified that he had on the job training over the past ten to twelve years which included training with four different field officers.[134]

Ms. Kador also alleges that Officer Terrance has a history of bad behavior.[135]  The deposition testimony of Chief McDonald does not reveal the allegations being made here.  Chief McDonald testified that on one occasion he had verbally reprimanded Officer Terrance, but he did not recall the exact incident, other than it did not involve a use of force.  Furthermore, the reprimand was made within the last two years of Chief McDonald's testimony which was taken on April 29, 2010;[136] one can only conclude that this reprimand was made after the March 24, 2007 incident in this lawsuit.

The court finds that plaintiffs have failed to establish that Officer Terrance was improperly trained.  Officer Terrance's failure to pass the firing range part of the academy does not automatically equate to being improperly trained.  Furthermore, plaintiffs have failed to show how his failure of the firing range test is causally connected to plaintiffs' claims.  No guns were involved in the arrest. We also find that plaintiffs have failed to submit summary judgment to establish her claim for failure to supervise.  Finally, plaintiffs have failed to allege or assert any facts regarding any wrongful conduct of Chief McDonald.  Accordingly, all claims against the New Roads Police Department and Chief McDonald will be dismissed.

---

[133]  Id.

[134]  Id. at pp. 34-36.

[135]  Plaintiff's exhibit 14, McDonald depo., p. 39.

[136]  Id. at p. 40.

## CONCLUSION

For the reasons given above, the motion for summary judgment filed by defendants regarding the claims of Donnysius Kador, will be granted in part and denied in part: the motion will be granted to the extent that the claims of false arrest, imprisonment and detainment, substantive and procedural due process and the state law claims of intentional and negligent infliction of emotional distress, false imprisonment, arrest and/or detention will be dismissed with prejudice; the claims against the New Roads Police Department and Chief Kevin McDonald will be dismissed with prejudice; the claims of excessive force and state law assault and battery remain viable claims. The motion for summary judgment filed by defendants regarding the claims of Donell Francois, Jr. will be granted dismissing all claims with prejudice; the claims against the New Roads Police Department will be dismissed with prejudice. The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 5th day of April, 2011.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE